**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

MAJED SUBH :
235 Birch Avenue :
Wilmington, DE 19805-2503 :
        Plaintiff :
  v. :
:
SECURITY GUARD, INC. :
t/a Gettier Security, Tri-County Security, :
and Imperial Security :
1142 E. Chestnut Avenue, Unit A :
Vineland, NJ 08360 :
:
    and :
:
GETTIER SECURITY :
1901 Ogletown Road :   Civil Action No. _____
Newark, DE 19711 :
:
    and :
:
TRI-COUNTY SECURITY SERVICE, INC.:
dba TRI-COUNTY SECURITY, NJ :
1142 E. Chestnut Avenue, Unit A :
Vineland, NJ 08360 :
:
    and :
:
IMPERIAL SECURITY, LLC :
8459 Ridge Avenue, 2nd Floor :
Philadelphia, PA 19128 :
        Defendants :
_____

## **CIVIL COMPLAINT**

      Plaintiff, Majed Subh, by and through his attorneys, The Derek Smith Law Group, PLLC, hereby bring this civil action pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.,* and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et. seq.*, and seeks relief from harassment, discrimination, disparate treatment, hostile work environment, and

retaliation related to Plaintiff's employment with Security Guard, Inc., Gettier Security, Tri-County Security, NJ, and/or Imperial Security. Plaintiff alleges and avers in support thereof:

## Parties

1. Plaintiff, Majed Subh (hereinafter "Plaintiff"), is an adult Palestinian immigrant, a Muslim, and a male approximately fifty-three (53) years of age and of darker complexion who was employed as a Security Guard for Security Guard, Inc., Gettier Security, Tri-County Security, NJ, and/or Imperial Security during times relevant to this litigation.

2. Defendant, Security Guard, Inc., is a multi-state company which, through its subsidiaries, provides on-site and road patrol security guard services to a number of private companies and organizations throughout Delaware, southern Pennsylvania, and southern New Jersey. Its subsidiaries do business as Gettier Security (in Delaware), Imperial Security (in Philadelphia, Pennsylvania), and Tri-County Security, NJ (in New Jersey). Defendant, Security Guard, Inc., and its subsidiaries are located in the states of Delaware, Pennsylvania, and Delaware, and employ more than 500 employees nationwide. Defendant, Security Guard, Inc.'s, headquarters are located at 1142 East Chestnut Avenue, Unit A, Vineland, NJ 08360.

3. Defendant, Gettier Security, is an entity, organization, and/or subsidiary of Security Guard, Inc. and at all times relevant an employer of Plaintiff. Defendant, Gettier Security, has an office and registered place of business at the above captioned address.

4. Defendant, Tri-County Security Service, Inc. dba Tri-County Security, NJ, is an entity, organization, and/or subsidiary of Security Guard, Inc. and at all times relevant an employer of Plaintiff. Defendant, Tri-County Security Service, Inc., has a registered office at the above captioned address.

5. Defendant, Imperial Security, LLC, is an entity, organization, and/or subsidiary of Security Guard, Inc. and at all times relevant an employer of Plaintiff. Defendant, Imperial Security, LLC, has a registered office at the above captioned address.

6. Defendant, Security Guard, Inc., Gettier Security, Tri-County Security Service, Inc., and Imperial Security, LLC, (hereinafter jointly and/or individually referred to as "Defendant(s)") agreed, accepted, adopted, acquiesced, and/or otherwise are bound by the actions, omissions, and conduct of its owners, officers, managers, supervisors, employees, and agents, including Mance Revell, Oriel Garcia, Brian Di Palma, Lisa Spatafore, and Kameron Shannon.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this matter as it involves a Federal Question, 28 U.S.C. §1331, and the Court maintains supplemental jurisdiction, 28 U.S.C. §1367, over the New Jersey state law causes of action.

4. Venue is appropriate before this Court as Defendant, Security Guard, Inc. is incorporated, resides, and operates business in the Camden Vicinage of the District Court for the District of New Jersey.

5. Furthermore, Plaintiff has exhausted administrative remedies by having filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 530-2023-0070), and Plaintiff received a Notice of Right to Sue.

## Summary of Facts

6. Plaintiff, Majed Subh, began work for Defendant(s) as a part-time Security Guard Officer, working at least 24 hours a week, beginning around September 11, 2006.

7. On information and belief, on December 3, 2012, Defendant, Security Guard, Inc. acquired Gettier Security, thereby making Plaintiff an employee of Defendant(s).

8. The Human Resources employee that originally hired Plaintiff in 2006, Carol Aiken, did not join or become employed by Defendant(s).

9. In 2016, Plaintiff was promoted to Security Guard Supervisor, which was a promotion that included an increase in pay to $11.00.

10. In or around February of 2017, Defendant(s) Assistant Manager Lou McCall trained Plaintiff for Road Patrol, which was a further promotion.

11. The Road Patrol position is responsible for travelling and checking on Security Guard Officers and Supervisors at various locations (or posts), and in this role, Plaintiff earned $12.00 an hour. Plaintiff earned $2.00 to $3.00 more an hour on Road Patrol than other positions.

12. In or around August of 2017, Defendant(s) hired, transferred, and/or promoted Mance Revell (African American, American citizen) to Manager, making Mr. Revell the Plaintiff's direct supervisor, and then soon thereafter Plaintiff began having problems with his pay.

13. Plaintiff complained to Mr. Revell about the pay issues and in response, Mr .Revell yelled, belittled and forcefully demanded Plaintiff out of his office.

14. The pay discrepancies Plaintiff brough to Mr. Revell would be resolved, but usually weeks later. Plaintiff believes and avers Mr. Revell intentionally was not paying Plaintiff accurately and/or delaying in fixing the issues as part of discrimination, and an effort to cause Plaintiff to quit.

15. For example, and not inclusive of all examples, Defendant(s) maintained a policy that when Road Patrol personnel uses his or her own vehicle, the Road Patrol employee receives an extra $1 an hour in pay. Plaintiff used his own vehicle, but often did not receive the extra pay.

16. As another example, Plaintiff's pay was reduced for his allegedly not wearing his armed duty belt. Plaintiff disputes claims he was not wearing the armed duty belt at the times Defendant(s) claimed he was not. Eventually, Plaintiff began saving evidence of him wearing the armed duty belt, by taking pictures. Plaintiff alleges and believes he was wrongly and unnecessarily targeted over this matter due to his protected classes and has loss of earnings as a result.

17. In or around January of 2018, Plaintiff asked Mr. Revell to inform or forewarn Plaintiff when Defendant(s) were cancelling Road Patrol for inclement weather. Plaintiff had troubles appearing on time due to waiting on decisions of whether Road Patrol would be cancelled. Mr. Revell became angry over the request and responded that he would remove Plaintiff from Road Patrol altogether.

18. Plaintiff alleges and believes Mr. Revell might have intentionally withheld notice of the cancellations to cause Plaintiff troubles getting to work on time.

19. Thereafter, between January 18, 2020 and March 16, 2020, Mr. Revell removed Plaintiff from Road Patrol around 18 times. It is alleged and believed this was done as part of discrimination and disparate treatment, and that Mr. Revell replaced Plaintiff with persons outside Plaintiff's protected classes.

20. Two weeks after Plaintiff requested the warning about cancellation of Road Patrol duty, Plaintiff asked Mr. Revell for relief from a post, at the end of Plaintiff's shift. Plaintiff was not relieved and had to work another eight hours. Plaintiff believes this was further discriminatory.

21. Between December 4, 2019 and January 18, 2021, Mr. Revell removed Plaintiff from Road Patrol and put Plaintiff on a posts where Plaintiff earned less money approximately, 50 to 100 times. It is alleged and believed this was done as part of discrimination and disparate treatment, and that Mr. Revell replaced Plaintiff on Road Patrol with persons outside Plaintiff's protected classes.

22. Defendant(s) reduced Plaintiff's hours of work during this time, resulting in loss of wages. It is alleged and believed Defendant(s) did not similarly reduce hours of persons outside Plaintiff's protected classes.

23. Defendant(s) subjected Plaintiff to undue and unnecessary discipline and strictness, including potentially negative performance reviews.

24. When Plaintiff had issues, problems, or concerns and contacted his supervisor, he was told to not email, stay away from the office, and/or otherwise to not contact them.

25. Around December 7, 2020 Defendant(s) Mr. Revell and Assistant Manager, Oriel Garcia (Hispanic male, American Citizen), sent Plaintiff for automotive work on Defendant(s) patrol vehicle and then did not pay Plaintiff for his time. Defendant(s) claimed Plaintiff had volunteered to have the vehicle fixed.

26. On December 14, 2020, while at work, Mr. Revell told Plaintiff "I hate Moslems (*sic* Muslims) and middle eastern people" and then yelled at Plaintiff "go back where you came from." Mr. Revell then told Plaintiff to leave his office.

27. Plaintiff was emotional upset, harmed, and damaged as a result of the unwelcome and discriminatory comments.

28. On February 1, 2021 Plaintiff emailed Defendant(s) President Lisa Spatafore (Caucasian female, American citizen) and Vice-President, Brian Di Palma (Caucasian male,

6

American citizen), a formal complaint that Plaintiff was being "unfairly discriminated against on the job." In this email, Plaintiff identified Mr. Revell and Mr. Garcia as the harasses and identified specific instances of having denied Plaintiff proper pay, having made discriminatory comments, having denied Plaintiff paper and ability to do his work, reduced hours, and similar conduct. Plaintiff reasonably complained in good faith as pertaining to race, religion, and national origin.

29. A phone conference was eventually scheduled and held between Plaintiff, Lisa Spatafore, and Brian Di Palma. Plaintiff made the same complaints set forth in the email complaint and the email's attachments.

30. Plaintiff is unsure of what investigation occurred thereafter but, on information and belief, no reasonable disciplinary action or reprimand was taken against Mr. Revell and Mr. Garcia.

31. Defendant(s), however, offered Plaintiff a different work location.

32. It took several months for Defendant(s) to provide a different work location, (around April), from which Plaintiff incurred months of lost wages.

33. The position to which Plaintiff was transferred in April of 2021 was Imperial Security in Pennsylvania, Managed by Kameron Shannon (Caucasian male, American citizen).

34. Although Plaintiff was transferred to Imperial, he maintained the rank of Security Guard Officer thereafter. Mr. Shannon told Plaintiff that Lisa Spatafore specifically said to not place Plaintiff in the role of Road Patrol.

35. Plaintiff worked as a Security Guard Officer at Durham School Buses from around April 20, 2021 to around October 11, 2022.

36. Defendant(s) contract with Durham School Buses expired, and was not renewed.

37. Plaintiff was separated from employment.

38. Defendant(s) claimed they would place Plaintiff elsewhere and offered work of a few hours or a shifts over the course of several months.

39. Plaintiff has not worked for Defendant(s) since October 11, 2022.

40. Plaintiff alleges and believes he was unfavorably transferred to Imperial and Durham School Buses as Defendant(s) knew the contract and employment at that location was ending, or likely to end, which was retaliatory.

41. Plaintiff alleges and believes Defendant(s) transfer of Plaintiff to Imperial and Durham School Buses, with the limitation that Plaintiff could not work Road Patrol, was an intentional discriminatory and/or retaliation action to limit and prevent Plaintiff from obtaining further work after the existing employment opportunity at Durham School Buses ended/expired.

42. Plaintiff alleges and believes Defendant(s) had other work, and more permanent work, available for Plaintiff after October 11, 2022, but denied and refused to offer the work to Plaintiff as part of discrimination and retaliation.

43. Plaintiff has suffered loss of wages, economic damages, pain and suffering, emotional harms, embarrassment, humiliation, loss of reputation, and related harms, all as a result of Defendant(s) wrongful harassment, disparate treatment, discrimination and retaliation.

44. It is alleged and believed that other guards working at Durham and Imperial that are/were outside Plaintiff's protected classes, and/or who/whom had not complained of discrimination, continued to maintain employment, and were treated more favorably.

**COUNT ONE**
*Race, Religion, Color, and National Origin –*
**Discrimination, Disparate Treatment, and Harassment**
*Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq.*
**Plaintiff v. Defendant(s)**

45. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

46. Defendant(s) is/are an employer / employers under 42 U.S.C. § 2000 *et. seq* as it/they is/are engaged in an industry affecting commerce that has / have 15 or more employees for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year.

47. Plaintiff is a person and has a protected class in that he is Palestinian, darker in color, a Muslim, and/or a Palestinian or nationless refugee by birth (i.e. Nationality).

48. Under 42 U.S.C. § 2000e-2. *[Section 703(a)]* "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…"

49. Defendant(s), by and through Mr. Revell and others, harassed and created a hostile work environment by and through comments and conduct of a discriminatory nature which had the intent or effect of creating an unreasonably hostile work environment.

50. At all times, Defendant(s) comments and conduct were unwelcome and discriminatory. Plaintiff eventually complained of the comments and conduct but nothing was done.

51. Even Defendant(s) facially neutral demotions, refusals to promote, reduced pay, reduced hours, mistreatment, and other conduct are/were apparently motivated by discriminatory hostilities and thus further support a hostile work environment.

52. Defendant(s) discriminated and disparately treated Plaintiff, by and through its officers, managers, and supervisors, as follows:

   a. Disparate discipline and implementation of rules and reprimands when similarly situated persons outside Plaintiff's protected class were treated more favorably;

   b. Denying and reducing Plaintiff's pay and hours and otherwise depriving Plaintiff of pay, in contrast to similarly situated persons outside his protected class;

   c. Removing Plaintiff from work and assignments and replacing Plaintiff with less qualified and individuals outside Plaintiff's protected classes;

   d. Negatively reviewing and evaluating and undue strictness when similarly situated persons outside Plaintiff's protected class were treated more favorably;

   e. Unfavorable transfers;

   f. Denying Plaintiff amenities of employment and other similar disparate treatment; and,

   g. Effectively terminating Plaintiff and denying him job opportunities.

53. As a direct and proximate result of Defendant(s) discrimination and harassment, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, humiliation, embarrassment, loss of reputation, and other similar harms, all to Plaintiff's great detriment.

54. Defendant(s) actions were willful and wanton and thus require the imposition of Punitive Damages.

55. Alternatively, as Defendant(s) considered Plaintiff's protected classes in the foregoing discrimination and harassment, Plaintiff is entitled to a charge for mixed-motive discrimination, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, Majed Subh, hereby demands judgment in his favor and against Defendants, Security Guard, Inc., Gettier Security, Tri-County Security, and Imperial Security, for any and all damages deemed necessary and just by the Court.

**COUNT TWO**
**Retaliation**
*Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq.*
**Plaintiff v. Defendant(s)**

56. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

57. Plaintiff's complaints about discrimination and mistreatment made to supervisors, Human Resources, and high-level executives of Defendant(s) was/were protected activities.

58. Defendant(s) reduction in hours, reduction in pay, unfavorable transfer, demotion or refused Road Patrol and Supervisor roles, termination, and refusal to find Plaintiff other permanent or part-time employment, were adverse employment actions that would likely dissuade a reasonable person from taking protected activity (i.e. making a complaint).

59. Defendant(s) adverse employment actions were after Plaintiff's protected activities.

60. There is a causal connection between Plaintiff's protected activities and Defendant(s) adverse actions as the temporal proximity between Plaintiff's protected activities and adverse actions were close to be unusually suggestive of retaliation, such that no further evidence of retaliation is necessary.

61. Alternatively, Plaintiff has evidence of animus and antagonism following his protected activity that raises an inference that the adverse actions was/were in retaliation for Plaintiff's protected activity / activities.

62. As a direct and proximate result of Defendant(s) retaliation, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-

of-pocket expense, emotional damages, loss of reputation, and other similar harms, all to Plaintiff's great detriment.

63. Defendant(s) actions were willful and wanton and thus require the imposition of Punitive Damages.

64. Alternatively, as Defendant(s) considered Plaintiff's protected activities in deciding to negatively review, discipline, reprimand, and/or terminate Plaintiff, Plaintiff is entitled to a charge for mixed-motive discrimination/retaliation, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, Majed Subh, hereby demands judgment in his favor and against Defendants, Security Guard, Inc., Gettier Security, Tri-County Security, and Imperial Security, for any and all damages deemed necessary and just by the Court.

### COUNT THREE
### Harassment, Discrimination. and Retaliation
*New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et. seq*
**Plaintiff v. Defendant(s)**

65. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

66. Defendant(s) harassed Plaintiff through comments and conduct of a discriminatory nature that had the intent or effect of creating an unreasonably hostile work environment. These comments and conduct were unwelcome and Plaintiff complained about the harassment.

67. Defendant(s) disparately treated and discriminated against Plaintiff on account of her race, color, religion, and national origin with respect to other similarly situated employees outside his protected classes, including with regard to:

    a. Hours of work;

    b. Pay;

    c. Demotions, assignments, shifts, and job duties;

    d. Denial of full-time, part-time, and reasonably existing employment opportunities, shifts, and hours;

    e. Amenities of employment and benefits

    f. Unfavorable transfers;

    g. Unreasonably harsh work performance evaluation, and appraisal;

    h. Discipline;

    i. Unreasonable and humiliating work requirements;

    j. Pay disparities in relation to similarly situated co-workers outside her protected classes; and,

    k. Termination.

68. Defendant(s) replaced Plaintiff with persons outside his protected classes.

69. As a direct and proximate result of Defendant(s) foregoing harassment and discrimination, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expense, emotional damages, pain and suffering, depression, anxiety, stress, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

70. Defendant(s) actions were willful and wanton and thus require the imposition of punitive damages.

71. Plaintiff seeks payment of costs and reasonable attorney's fees.

72. Alternatively, as Defendant(s) considered and/or were motivated by wrongful discrimination, Plaintiff is entitled to a charge for mixed-motive discrimination and thus the imposition of attorney's fees.

WHEREFORE, Plaintiff, Majed Subh, hereby demands judgment in his favor and against Defendants, Security Guard, Inc., Gettier Security, Tri-County Security, and Imperial Security, for any and all damages deemed necessary and just by the Court.

### COUNT FOUR
### Retaliation
*New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(d)*
**Plaintiff v. Defendant(s)**

73. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

74. Under the NJLAD it shall be an unlawful employment action: "for any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act." N.J.S.A. 10:5-12(d).

75. Plaintiff engaged in protected activity when he complained and opposed the foregoing discriminatory treatment, as averred *Supra.*

76. Defendant(s) retaliated, took reprisal, and/or otherwise took adverse actions against Plaintiff as alleged *Supra*, all within temporal proximity to Plaintiff's protected activity/opposition, such that an inference of retaliation arises.

77. Alternatively, there is/are a series of antagonistic and/or series of animus against Plaintiff from which an inference of retaliation arises.

78. As a direct and proximate result of Defendant(s) retaliation, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out-

of-pocket expenses, emotional damages, depression, anxiety, stress, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

79. Defendant(s) actions were willful and wanton and thus require the imposition of punitive damages.

80. Plaintiff seeks payment of costs and reasonable attorney's fees.

81. Alternatively, as Defendant(s) considered and/or were motivated by wrongful discrimination, Plaintiff is entitled to a charge for mixed-motive discrimination and thus the imposition of attorney's fees.

WHEREFORE, Plaintiff, Majed Subh, hereby demands judgment in his favor and against Defendants, Security Guard, Inc., Gettier Security, Tri-County Security, and Imperial Security, for any and all damages deemed necessary and just by the Court.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

_____
CHRISTOPHER J. DELGAIZO, ESQUIRE
Attorney for Plaintiff

1835 Market Street, Suite 2950
Philadelphia, PA 19103
T: 215-391-4790
Fax: 215-501-5911
Email: Chris@dereksmithlaw.com

Date: March 15, 2023