[Docket No. 14]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MAJED SUBH,<br><br>        Plaintiff,<br><br>   v.<br><br>SECURITY GUARD, INC.,<br>GETTIER SECURITY, TRI-<br>COUNTY SECURITY SERVICE,<br>INC. *d/b/a* TRI-COUNTY<br>SECURITY, NJ and IMPERIAL<br>SECURITY, LLC,<br><br>        Defendants. | Civil No. 23-1462 (RMB-EAP)<br><br>**OPINION** |

## APPEARANCES

Christopher J. DelGaizo, Esq.
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103

    *On behalf of Plaintiff*

Kathryn M. Brady, Esq.
Kane, Pugh, Knoell, Troy & Kramer LLP
510 Swede Street
Norristown, PA 19401

    *On behalf of Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon a Motion to Dismiss filed by

Defendants. [Docket No. 14.] For the reasons expressed herein the Court **DENIES**

**in part and GRANTS in part** Defendants' Motion to Dismiss.

## I.     FACTUAL BACKGROUND

Plaintiff Majed Subh is a Palestinian man and a practicing Muslim. [Compl. ¶

1.] For nearly fifteen years, he worked as a part-time security guard for Defendants,

which provide private on-site and road patrol security guard services to several

companies and organizations throughout Delaware, Pennsylvania, and New Jersey.

[*Id.* ¶¶ 2, 6.][1] In February 2017, Defendants promoted Plaintiff to a "Road Patrol"

position. Road Patrol involves travelling and checking in on security guard officers

and supervisors at various locations or posts. [*Id.* ¶ 10–11.] Road Patrol pays more

than other security guard positions. In Plaintiff's prior role as a security guard

supervisor, he earned $11.00 an hour. On Road Patrol, he would earn $12.00 an

hour or, if he used his own car for the patrols, $13.00 an hour. [*Id.* ¶¶ 11, 15.]

Plaintiff's supervisor on Road Patrol was Mance Revell. [*Id.* ¶ 12.] Shortly

following Defendants' promotion of Mr. Revell to Road Patrol manager in August

2017, Plaintiff started experiencing problems in the workplace which he alleges were

---

[1] Defendants include Security Guard, Inc., and its subsidiaries Gettier Security, Imperial Security, LLC, Tri-County Security, NJ. Plaintiff states that the Complaint misidentifies Tri-County Security, NJ as "Tri-County Security Service, Inc." [Pl.'s Br. at 1 n.1.] Gettier operates in Delaware, Imperial operates in Pennsylvania, and Tri-County Security, NJ operates in New Jersey. [Compl. ¶ 2.]

directly attributable to discriminatory motivations by Mr. Revell. Specifically,
Plaintiff alleges that Mr. Revell would routinely remove Plaintiff from Road Patrol
and instead assign him to non-Road Patrol posts where he would earn less money.
[*Id.* ¶ 21.] Sometimes, Mr. Revell would reduce Plaintiff's hours at work altogether.
[*Id.*][2]

Even when Plaintiff did perform Road Patrol duties, Plaintiff had issues with
Mr. Revell and Mr. Revell's assistant manager, Oriel Garcia.[3] Plaintiff alleges that
Mr. Revell would often not pay him the extra $1.00 per hour he was entitled to for
using his own vehicle on Road Patrol and that, on one occasion, Mr. Revell and Mr.
Garcia did not pay Plaintiff for time Plaintiff spent getting Defendants' Road Patrol
vehicle serviced and repaired. [*Id.* ¶¶ 15, 25.] Mr. Revell also once allegedly reduced
Plaintiff's Road Patrol pay because Plaintiff failed to wear his armed duty belt, a
charge Plaintiff disputes. [*Id.* ¶ 16.] When Plaintiff complained to Mr. Revell about
these pay issues, Mr. Revell would "yell[], belittle[] and forcefully demand[]"
Plaintiff to get out of his office. [*Id.* ¶ 13.] Plaintiff alleges that the payment issues
would usually get resolved, but only weeks later in a deliberate effort to cause
Plaintiff to quit. [*Id.* ¶ 14.]

---

[2] Each time Plaintiff was removed or unscheduled from Road Patrol (approximately
68 times between January 2020 and January 2021), he alleges that he was replaced
with employees outside his protected class. [Compl. ¶¶ 19, 21.]
[3] Both Mr. Revell and Mr. Garcia are outside of Plaintiff's protected class. [Compl.
¶¶ 12, 25.]

Plaintiff also alleges that Mr. Revell failed to give Plaintiff enough notice regarding whether Road Patrol would (or would not) be canceled when there was inclement weather. [*Id.* ¶ 17.] Plaintiff would be left guessing on those days whether Road Patrol was on or off until the last minute. If Road Patrol was still on despite the inclement weather, Plaintiff alleges that he would not have enough notice to arrive to work on time and would then be subjected to discipline by Mr. Revell. [*Id.*] In January 2018, when Plaintiff asked Mr. Revell to give him more notice regarding Road Patrol cancelations, Mr. Revell became angry and threatened to remove Plaintiff from Road Patrol altogether. [*Id.*] Two weeks after Plaintiff requested more advanced notice if Road Patrol would be cancelled, Mr. Revell failed to relieve Plaintiff from his night-time shift, forcing Plaintiff to work another eight hours. [*Id.* ¶ 20.] Plaintiff alleges this was deliberatively punitive. [*Id.*]

The height of Plaintiff's difficult relationship with Mr. Revell took place on December 14, 2020. While at work, Mr. Revell told Plaintiff "I hate Moslems [*sic*] and middle eastern people" and then yelled at Plaintiff to "go back to where [he] came from." [*Id.* ¶ 26.] Plaintiff was upset by Mr. Revell's comments and, on February 1, 2021, made a complaint to Defendants' management that Mr. Revell and Garcia were unfairly discriminating against Plaintiff, citing his denials of pay, reduced hours, and the discriminatory comments. [*Id.* ¶ 28.] Defendants offered Plaintiff a work transfer to Imperial Security in Pennsylvania. [*Id.* ¶¶ 32–33.] The transfer took two months to complete, and Plaintiff did not begin work at Imperial Security until April 2021. [*Id.* ¶ 33.] Following the transfer, Plaintiff was demoted to

4

the position of security guard officer and his new supervisor, Kameron Shannon, told Plaintiff that Defendants' President, Lisa Spatafore, specifically instructed Mr. Shannon to not place Plaintiff on Road Patrol. [*Id.* ¶ 34.][4]

From April 2021 to October 2022 Plaintiff carried out security guard officer duties for Durham School Buses ("Durham") on behalf of Imperial Security. [*Id.* ¶ 35.] Plaintiff's work with Durham ended in October 2022 because Defendants' contract with Durham expired and was not renewed. [*Id.* ¶ 36.] Plaintiff alleges that his placement with Durham was intentional, and that Defendants knew the Durham contract would be ending and that, after it did, Defendants could terminate Plaintiff for good. [*Id.* ¶ 40.] Nonetheless, Plaintiff concedes that following expiration of the Durham contract, Defendants offered him a few hours and shifts of work over the next several months. [*Id.* ¶¶ 38–39.] Plaintiff did not act on these offers. [*Id.*] Plaintiff alleges that Defendants promised him more permanent work following expiration of the Durham contract but never placed him on another permanent assignment. [*Id.* ¶ 38.] Plaintiff has not worked for Defendants since the expiration of the Durham contract in October 2022. [*Id.* ¶ 39.]

## II.    PROCEDURAL BACKGROUND

Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. [*Id.* ¶ 5; *see also*

---

[4] Ms. Spatafore and Mr. Shannon are also outside Plaintiff's protected class. [Compl. ¶¶ 28, 33.]

Defs,' Mtn., Exs. A–B, Docket Nos. 14-3, 14-4.] Having exhausted his administrative remedies, Plaintiff filed this lawsuit on March 15, 2023, alleging discrimination and disparate treatment, hostile work environment/harassment, and retaliation claims on the basis of his race, color, religion and national origin under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*, and the New Jersey Law Against Discrimination. ("NJLAD"). Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Docket No. 14.] Plaintiff opposed. [Docket No. 15.] Defendants did not submit a reply.

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251

(7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to

state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (*quoting Twombly*, 550 U.S. at 570).

## IV.    ANALYSIS[5]

### A.    Discrimination and Disparate Treatment

Title VII and the NJLAD prohibit employment discrimination because of race, color, religion, sex, or national origin. Courts review employment discrimination cases under both Title VII and the NJLAD using the burden-shifting framework outlined in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). To state a *prima facie* case of employment discrimination, a plaintiff must show (1) membership in a protected class; (2) qualification for the position in question; (3) an adverse employment action; and (4) that the adverse employment action gives rise to an inference of unlawful discrimination. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).[6] At the motion to dismiss stage, "a plaintiff must plead facts that would make his *prima facia* case under the *McDonnell Douglas* framework plausible." *Caviness v. Aramark Corr. Servs., LLC*, 2015 WL 1888246, at *2 (D.N.J. Apr. 15, 2015).

---

[5] The Court undertakes Plaintiff's Title VII and NJLAD claims together in the same analysis. New Jersey courts have held that the standard used to adjudicate claims under Title VII is substantially identical to NJLAD claims. *See Martone v. Jet Aviation Flight Servs., Inc.*, 2021 WL 1608891, at *7 (D.N.J. Apr. 26, 2021)

[6] If a plaintiff can make out a *prima facie* case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–04. The burden then shifts a final time with the plaintiff bearing the burden of establishing that the employer's stated reason for the adverse action was pretextual. *Id.*

1. *Adverse Employment Actions*

Plaintiff alleges that he is a member of a protected class, [Compl. ¶ 1] and was trained, promoted and qualified to serve on Road Patrol, [Compl. ¶ 10]. He also properly alleges several adverse employment actions including (i) improper wage loss, including failing to compensate Plaintiff for using his own Road Patrol vehicle, [Compl. ¶ 15]; and (ii) his reduced hours, demotions, and removals from Road Patrol, [*id.* ¶¶ 21–22, 34]. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 749 (1998) (adverse employment action must result in "significant change in employment status" including "hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits," such as reduced hours and wages); *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 217 (3d Cir. 2017).[7]

The Court is not convinced, however, that Plaintiff has properly alleged a termination. Plaintiff concedes that following the expiration of the Durham contract,

---

[7] With respect to Plaintiff's delayed transfer, the Court notes that a delay in reassignment or transfer is not necessarily an adverse employment action. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (months-long delay in reassignment not an adverse employment action). But it could be. In *Galabya*, the Second Circuit found that a teacher's delay in reassignment was not an adverse employment action because he did not allege that he was denied an available transfer, the defendant failed to pay his salary during the interim period, or that the delay otherwise harmed his career. *Id.* The *Galabya* court explained that the plaintiff had only suffered "unspecified inconvenience" due to "relatively minor administrative miscues," which was not cognizable as an adverse employment action. *Id.* Here, Plaintiff does allege that he lost wages in the interim period pending his transfer. [Compl. ¶ 32.] Plaintiff does not allege how or why he lost wages in the interim period but drawing all inferences in his favor, the Court finds the delayed transfer to also be a plausibly adverse employment action.

he was offered "a few hours or a shift" by Defendants over the course of the next several months. [Compl. ¶ 38.] Defendants' offer might have resulted in further reduced hours and pay for Plaintiff, which would be an adverse employment action. *See Moody*, 870 F.3d at 217 (reduction of hours and pay may qualify as an adverse employment action). But reduced hours and pay are different from termination. It appears Plaintiff simply did not accept Defendants' offer because he wanted (and alleges he was promised) more permanent work from Defendants.

## 2.    *Inference of Unlawful Discrimination*

Defendants also argue that Plaintiff has failed to establish the fourth *McDonald Douglas prima facie* element that any adverse employment action Plaintiff has suffered must give rise to an inference of unlawful discrimination. An inference of unlawful discrimination can be established in a number of ways including discriminatory comments by a supervisor with decision-making authority, *see Johnson v. City of Philadelphia*, 2009 WL 2914364, at *6 (E.D. Pa. Sept. 10, 2009) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003), or through a showing of disparate treatment—that is, that similarly situated employees outside of Plaintiff's protected class were treated more favorably, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999).

Plaintiff's allegations regarding his supervisor's facially discriminatory comments regarding Muslims and Middle Easterners are sufficient to establish an inference of discrimination at this stage. Defendants argue that Mr. Revell did not

have authority to terminate Plaintiff. [Defs.' Br. at 7.] Maybe so, but that is irrelevant. *See Moody*, 870 F.3d at 217 n.14 (fact that individual is unable to fire or hire employees does not mean that they are not a supervisor through whom liability may flow from). As alleged, Mr. Revell plainly had authority to, and did, take adverse actions against Plaintiff related to his wages, hours, and duties and he had authority to assign or not assign Plaintiff work. Properly considered in context with Mr. Revell's comments directed at Plaintiff regarding his hatred of Muslims and Middle Easterners, Plaintiff can plausibly allege an inference of discrimination against Defendants. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 790 (1998) (explaining that "claims against employers for discriminatory employment actions with tangible results, like hiring, firing, promotion, compensation, and work assignment" can result in vicarious employer liability under Title VII). Plaintiff has thus plausibly pleaded the *prima facie McDonnell Douglas* elements to state a claim of discrimination.

The Court finds, however, that Plaintiff cannot plausibly allege disparate treatment discrimination. Plaintiff offers only conclusory allegations that he was consistently treated less favorably than employees outside his protected class. [*See, e.g.*, Compl. ¶¶ 19, 21–22, 44.] Such generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination. *See Doe v. Sizewise Rentals, LLC*, 2010 WL 4861138, at *6 (D.N.J. Nov. 22, 2010), *aff'd*, 530 F. App'x 171 (3d Cir. 2013) (rejecting disparate treatment discrimination theory where allegations amounted to generalized and conclusory accusations that plaintiffs were treated

11

differently than similarly situated persons outside their protected class). Accordingly, the Court will dismiss Plaintiff's discrimination claim insofar as it is based upon a disparate treatment theory.

### B.    Retaliation

To establish a *prima facia* retaliation claim under Title VII or the NJLAD, a plaintiff must show that (1) that he engaged in protected activity, such as making informal complaints of discrimination to company management; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between the plaintiff's protected activity and the adverse employment action taken. *See Moore v. City of Philadelphia*, 461 F.3d 331, 339 (3d Cir. 2006), *as amended* (Sept. 13, 2006). Defendants do not dispute that Plaintiff engaged in protected activity in making a complaint to management about Mr. Revell's conduct. They argue, instead, that Plaintiff failed to show that he suffered an adverse employment action because management transferred Plaintiff to another patrol where he would not be supervised by Mr. Revell. [Defs.' Br. at 10.] And even if Plaintiff could show an adverse employment action, Defendants argue that there was no causal connection between Plaintiff's protected activity (lodging a complaint against Mr. Revell) and any adverse action because Plaintiff was ultimately not terminated; Defendants' contract with Durham simply ended and, when it did, Defendants offered additional hour/shifts to Plaintiff which he did not act upon. [*Id.* at 10–11.]

Defendants' characterization of the adverse employment action is too narrow. Plaintiff sufficiently alleges an adverse employment action through his transfer and demotion from Road Patrol following his complaints to Defendants. [Compl. ¶ 34; *see also id*. ¶¶ 6–12 (explaining that Plaintiff was hired as a security guard officer in 2006, promoted to security guard supervisor in 2016 (paying $11.00 per hour), and again promoted to Road Patrol in 2017 (paying up to $13.00 per hour)).] An unfavorable transfer and demotion leading to less pay is an obvious adverse employment action.

The harder question—as usual with retaliation claims—is whether Plaintiff can plausibly show that his protected activity caused the adverse employment action. A plaintiff can establish a causal inference of retaliatory discrimination through (i) an unduly suggestive temporal proximity between the protected activity and the adverse action, *see Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001); (ii) evidence of "antagonism or retaliatory animus" towards the plaintiff in the intervening period between the protected activity and the adverse employment action, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007); or (iii) where the "evidence, looked at as a whole, may suffice to raise the [causal] inference," *id*. (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–81 (3d Cir. 2000)).

The Court finds that Plaintiff can establish a causal inference of retaliation considering the allegations as a whole. *See Farrell*, 206 F.3d at 271.[8] Most relevantly,

---

[8] Usually, an adverse action must occur quickly after the protected activity for a court to infer retaliatory causation based on temporal proximity. *See Lichtenstein v. Univ. of*

Plaintiff alleges that following his transfer, Mr. Shannon, his new supervisor, told him that the company president Ms. Spatafore instructed Mr. Shannon "not [to] place Plaintiff [on] Road Patrol." [Compl. ¶ 34.] Plaintiff does not allege so specifically, but the inference the Court must draw in his favor on a motion to dismiss is that Ms. Spatafore instructed Mr. Shannon not to place Plaintiff on Road Patrol because Plaintiff made complaints to management. That may ultimately be untrue. Defendants could show that Plaintiff was demoted from Road Patrol for legitimate reasons unrelated to his making complaints about Mr. Revell or that there were no Road Patrol positions which Defendants could place Plaintiff on. But the Court cannot assume so at this stage of the proceedings. Thus, Plaintiff's retaliation claims may proceed.

### C.    Hostile Work Environment

To establish a hostile work environment claim against an employer, a plaintiff must show that: (1) the employee suffered intentional discrimination because of his or her protected class; (2) the discrimination was pervasive or severe; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence

---

*Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (collecting cases finding "unduly suggestive" temporal proximity ranging from two days to three weeks). Here, Plaintiff seems to allege the opposite—that because Defendants took too long to transfer Plaintiff, and that he lost wages pending the transfer, he can establish a temporal inference of retaliatory causation. [Compl. ¶ 32.] The Court finds this allegation more appropriately considered with the causal allegations as a whole rather than on its own to establish a temporal inference of retaliatory causation.

of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Courts evaluate the "overall scenario" in deciding whether a work environment was hostile considering both "facially neutral mistreatment and overt ethnic discrimination, which in sum constitute the hostile work environment." *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001) (cleaned up). Factors to evaluate include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 167 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Defendants argue that Plaintiff can point to only one offensive, but not severe or pervasive, comment, that Mr. Revell "hat[ed]" Muslims and Middle Eastern people. [Defs.' Br. at 9.] Plaintiff responds that the Court must consider Mr. Revell's facially discriminatory comments about his protected status—which he argues was plausibly severe—together with facially neutral mistreatment by Mr. Revell related to Plaintiff's pay, shift, and job duties. [Pl.'s Br. at 5.] Viewed as a whole, Plaintiff argues that the alleged discrimination was plausibly pervasive. [*Id.*]

Considering the totality of the circumstances, the Court finds that Plaintiff can state a claim for a hostile work environment at this stage. As alleged, Mr. Revell's comments that he "hates [Muslims] and Middle Eastern people" and that Plaintiff should "go back to where he came from" (presumably, Palestine or the Middle East) were sufficiently severe to state a claim for a hostile work environment. The comments reflect "disgust for an employee based on a protected status" which is

15

sufficiently severe to alter the conditions of employment and create an abusive working environment. *See Durand v. FedEx*, 2015 WL 140215, at *8 (D.N.J. Jan. 12, 2015). *Durand* involved similar comments. In that case, the court denied reconsideration from a denial of summary judgment and held that a supervisor's isolated comments to the plaintiff, a Peruvian man, that she "hates Peruvians, all Peruvians" and that all Peruvians are *comemierda*—"shitheads"—were "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Id.* So too here. Mr. Revell's alleged comments, even alone, are plausibly severe to allege a hostile work environment at the motion to dismiss stage.[9]

Mr. Revell's facially discriminatory comments must also be set within the context of his facially neutral conduct against Plaintiff over the course of three years. That conduct includes allegedly (i) arbitrarily reducing Plaintiff's pay, [Compl. ¶ 15–16]; (ii) reducing Plaintiff's hours on Road Patrol, [*id.* ¶ 22]; (iii) demoting Plaintiff from Road Patrol on occasion, [*id.* ¶ 21]; (iv) threatening to remove Plaintiff from Road Patrol altogether [*id.* ¶ 17]; (v) lowering Plaintiff's pay based on allegedly false assertions that Plaintiff failed to wear proper equipment, [*id.* ¶ 16]. Taken together,

---

[9] As Plaintiff correctly points out, even a single discriminatory utterance, if extreme enough, can rise to the level of hostile work environment. *Castleberry*, 863 F.3d at 265–66 (3d Cir. 2017) (explaining that "some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive").

Plaintiff can plausibly allege that Defendants also created a pervasively hostile work environment.[10]

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED in part and GRANTED in part.** An accompanying Order shall issue.

| | |
|---|---|
| December 6, 2023 | s/Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | United States District Judge |

---

[10] Plaintiff has also sufficiently alleged the remainder of the hostile work environment elements. *Castleberry*, 863 F.3d at 266 ("[A] claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established."). He plausibly alleges that he suffered intentional discrimination through Mr. Revell's facially discriminatory comments combined with facially neutrally conduct giving rise to an inference of discrimination and that he was detrimentally affected by Mr. Revell's comments which the Court finds at this stage would have reasonably affected a similarly situated plaintiff. [Compl. ¶ 27.] Finally, Plaintiff has plausibly established *respondeat superior* liability against Defendants because he alleges that Mr. Revell was his supervisor. *Faragher*, 524 U.S. at 807 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee.").